FILED

March 9, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 10:29 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | |
|---|---|
| **MARK STAMBAUGH**<br>**Employee,**<br><br>**v.**<br><br>**SIMON ROOFING COMPANY**<br>**Employer,**<br>**And**<br><br>**LIBERTY MUTUAL INSURANCE**<br>**Insurance Carrier.** | ) **Docket No.: 2015-07-0335**<br>)<br>)<br>) **State File No.: 43894-2015**<br>)<br>) **Judge Amber E. Luttrell**<br>)<br>)<br>)<br>)<br>)<br>) |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by the employee, Mark Stambaugh, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Stambaugh seeks medical and temporary disability benefits for multiple injuries, primarily to the head and left arm. The issue for determination is whether Mr. Stambaugh presented sufficient evidence of a compensable work injury resulting from a fall to prove a likelihood of success at a trial on the merits. The employer, Simon Roofing Company, maintains Mr. Stambaugh's willful misconduct, willful failure to use a safety device, and/or intoxication or illegal drug use bar his recovery. If the Court finds Mr. Stambaugh is likely to succeed at a hearing on the merits in proving he suffered a compensable injury, then medical and temporary benefits are at issue. For the reasons set forth below, the Court finds Mr. Stambaugh is not entitled to the requested benefits.

### History of Claim

Mr. Stambaugh is a fifty-seven-year-old resident of Carroll County, Tennessee. He is an experienced roofer and began working for Simon Roofing on February 25, 2015. (Ex. 8.) On June 8, 2015, while working on a roof at Taco Bell in Martin, Tennessee, Mr. Stambaugh fell from a ladder to the ground and sustained multiple injuries. The parties fervently dispute how and why the injury occurred.

1

Mr. Stambaugh testified he sustained a head injury affecting his memory. He described his memory of the activities leading up to the accident as "very vague" and later "vague at best." Nevertheless, Mr. Stambaugh stated he arrived at Taco Bell at seven a.m. on June 8, 2015. He logged onto his computer to clock in for the day. He then untied his ladder from his truck and set it up against the exterior wall of the building to access the roof. Mr. Stambaugh described the roof as mostly flat with a "little pitch to it" with a four foot tall parapet wall around the roof. He used a rope on the ladder to raise it up to the roof and then climbed the ladder.

Mr. Stambaugh stated he tied off the ladder with his own personal bungee cord.[1] He stretched the bungee cord from the ladder, over the parapet wall, and attached it to the lip of the wall.[2] Mr. Stambaugh testified the parapet wall was three to four feet wide.[3] He acknowledged tying off the ladder is a safety requirement of Simon Roofing. (Ex. 10.) He testified Simon Roofing's safety policy requires employees to wear a safety harness when the parapet wall is thirty-nine inches or less in height; he did not wear a safety harness that day. Mr. Stambaugh estimated the parapet wall on the job site was forty-eight inches tall. He admitted the safety policy also required him to wear a harness when "roping up" supplies and equipment. He testified he roped up his supplies. He recalled working approximate three or four hours before his accident. He stated he completed approximately ninety percent of the work before deciding to leave the job site for a lunch break.

Mr. Stambaugh testified shortly before the accident he walked around "checking my flies[4] and stuff." He stated, "then I took some buckets and set them up on the parapet wall next to the ladder. I was going to lunch." Mr. Stambaugh testified he removed the bungee cord to untie the ladder before going down the ladder since he intended to leave the premises. Simon Roofing's policy required removing the ladder from the job site when leaving the premises. It was necessary to untie the ladder at the top in order to remove the ladder from the wall. Mr. Stambaugh testified he did not recall what happened after he untied the ladder.

Mr. Stambaugh stated in his affidavit that the last of his recollection was that he walked on the parapet wall and swung his leg over to climb onto the ladder. (Ex. 10 at 3.) Mr. Stambaugh left a leaf blower and shovel sitting on the parapet wall. (Ex. 16.) When asked about Simon's safety rule regarding removing everything from the parapet wall before leaving the work site, Mr. Stambaugh acknowledged the rule, but replied, "If I

---

[1] Mr. Stambaugh did not explain why he used a personal bungee cord rather than the bungee cord provided by his employer. Simon Roofing's representative, Walter Fluharty, testified the company did not permit employees to use their own personal safety equipment.

[2] Mr. Stambaugh referenced the photograph of the parapet wall in Exhibit 12.

[3] In his affidavit, he stated the wall was six feet wide. (Ex. 10.)

[4] The Court notes it is unclear if Mr. Stambaugh said or intended to say "flies." It is what the Court heard from his testimony.

2

hadn't fallen, those would never have been there." He later stated he intended to leave the blower and shovel on the wall while he left for lunch despite Simon Roofing's safety policy.

Mr. Stambaugh testified he has no memory of the events or days that followed his accident until approximately June 14, 2015, the day before his discharge from the Regional Medical Center in Memphis, Tennessee. Medical records from Regional Medical Center indicated Mr. Stambaugh suffered a left frontal bone fracture, superior orbital wall fracture, lamina papyracea fracture, left open distal radial fracture, and left scaphoid fracture from a fall injury from a ladder. (Ex. 5.) He underwent surgery on his left arm on June 8 and June 12, 2015. *Id.* Regional One Medical discharged Mr. Stambaugh on June 15, 2015. The hospital administered a post-accident urine drug screen, which was positive for hydromorphone and opiates. (Ex. 7.)

After his release, Mr. Stambaugh followed up with Dr. Mark Jobe, orthopedist at Campbell Clinic, for his left arm. Mr. Stambaugh last saw Dr. Jobe on August 10, 2015. *Id.* On that visit, Dr. Jobe placed him in a short arm cast and opined, "[h]e is still not able to return to roofing work." Dr. Jobe further noted Simon Roofing denied his workers' compensation claim and Mr. Stambaugh had no medical insurance. *Id.* Mr. Stambaugh testified he has not worked since June 8, 2015, and received no further treatment for his injuries after August 10, 2015.

While hospitalized, Mr. Stambaugh signed a Simon Roofing Employee Accident Form completed by his wife, Tammy Stambaugh. (Ex. 6.) Mr. Stambaugh testified he has no recollection of reviewing or signing the form because he remained medicated during the entire hospital stay. Upon review of the Accident Form, Mr. Stambaugh disputed everything contained in the "Accident Details" section of the form. He stated, "everything is different." Mr. Stambaugh subsequently received a letter and Notice of Denial from Liberty Mutual Insurance dated June 18, 2015, citing willful misconduct and willful failure to use a safety device as reason for the denial. (Ex. 3 and 13.)

Mr. Stambaugh testified to a prior work-related injury to his back with another employer for which he takes Valium and Oxycodone prescribed by his personal physician on an as-needed basis. He takes this medication "pretty much every day." However, he stated the last time he took the medication before the work injury was June 6, 2015. He further testified his medication for his back never affected his work or decision-making. Mr. Stambaugh kept his medication in his suitcase in his work truck.

Mr. Stambaugh acknowledged he completed on online safety training program for Simon Roofing prior to starting work. He was aware of Simon Roofing's safety policies and procedures, which included ladder safety training, harness training, and training on how to safely transport materials up and down from a roof. He acknowledged the rules require employees to use a rope to pull materials up onto a roof and that employees must

3

wear a harness when roping up materials. Employees are not allowed to carry materials up a ladder by hand. Mr. Stambaugh testified he understood the purpose of Simon Roofing's safety policies.

Mr. Stambaugh denied knowledge of Simon Roofing's drug policy precluding the use of narcotic medication when working on a roof. Mr. Stambaugh stated he "wasn't ever told that." Mr. Stambaugh admitted he received and signed Simon Roofing's Safety Policy and Training Acknowledgement Form," which confirmed he read and understood the company's drug and alcohol free workplace policy. (Ex. 15.)

Mrs. Stambaugh testified on her husband's behalf. On the date of the injury, she stated she found Mr. Stambaugh unresponsive when she arrived at the hospital. She observed cuts on his face and his arm held up by a brace. Mrs. Stambaugh traveled to the hospital daily to visit her husband. She testified she was unable to carry on detailed conversations with him in the hospital. She asked him questions and he had difficulty responding due to heavy sedation.

Mrs. Stambaugh testified Ray Williamson,[5] Mr. Stambaugh's supervisor, visited them in the hospital and spoke to her. Simon Roofing sent Mr. Williamson to the accident site within two hours of the accident to investigate, secure the site and secure Mr. Stambaugh's work truck. He also took photos of the scene. Mrs. Stambaugh stated Mr. Williamson told her what he believed happened. Mrs. Stambaugh testified the Liberty Mutual adjuster, Jamie Durney, instructed her to fill out the Simon Accident Report in order for Mr. Stambaugh to receive workers' compensation benefits. Mrs. Stambaugh stated she filled out the report based upon Mr. Williamson's account of the accident. The description of accident stated, "[w]as finished doing repair on Taco Bell roof, Martin Tennessee. Was going to climb down ladder to get a garbage bag to clean up my debris and the ladder slipped and the five gallon bucket of concrete fell with me." Mrs. Stambaugh stated she did not review the report with Mr. Stambaugh when she asked him to sign it.

Simon Roofing offered the testimony of Joseph Simon and Walter Fluharty for its case in chief.

Mr. Simon previously worked for Simon Roofing as the Risk and Asset Manager. He is currently self-employed. Simon Roofing terminated him in July 2015 for failure to enforce the company's safety policy when he did not terminate an employee for failing to tie off a ladder. Mr. Simon's family owns Simon Roofing. His grandfather started the company and his cousins own it. He has no ownership in the company.

---

[5] The Court notes Mr. Williamson did not testify by affidavit or at the Expedited Hearing.

4

Following the accident, Mr. Simon's boss, Dr. Walter Fluharty,[6] instructed him to travel to Memphis to visit Mr. Stambaugh. On June 10, 2015, Mr. Simon flew from Ohio to Memphis and visited Mr. Stambaugh in the hospital. He testified no one else was present during his visit. Mr. Simon described Mr. Stambaugh's condition as "pretty bad looking." He stated he was "moved" by Mr. Stambaugh's condition and asked if he could say a prayer. Mr. Simon prayed over Mr. Stambaugh and they both shed tears. Following the prayer, Mr. Stambaugh told Mr. Simon what he remembered and apologized for not following Simon Roofing's safety procedures and tying off the ladder. According to Mr. Simon, Mr. Stambaugh told him he placed the ladder against the building and when he climbed to the top, he realized there was not a good place to tie off the ladder. Mr. Stambaugh informed him he brought the blower up the ladder by hand and put it down and stepped back onto the ladder. That was the last thing he remembered. Mr. Simon testified Mr. Stambaugh indicated he did not rope up the materials.

Mr. Stambaugh testified he vaguely recalled a representative from Simon Roofing visiting him in the hospital, but he did not recall what he told him. (Ex. 10 at 4.)

Following Mr. Simon's visit with Mr. Stambaugh, he called Dr. Fluharty and discussed the conversation. He also sat in the hospital cafeteria and made notes documenting his conversation with Mr. Stambaugh. (Ex. 18.)

Dr. Fluharty is the Vice President of Environmental Health and Safety and Organizational Development for Simon Roofing. He has a doctorate in psychology and a master's degree in occupational safety and health. Dr. Fluharty testified he is a certified ergonomics specialist and trained in root cause analysis.

Dr. Fluharty testified regarding Simon Roofing's safety training policy and procedures. He specifically described Mr. Stambaugh's training regarding the fall protection policy that included tying off a ladder, use of a harness, and when to use an anchor. Dr. Fluharty explained a bungee cord may be used to tie off a ladder by hooking it to a fascia, molding, or gutter. However, if there is nothing to tie the bungee onto, an employee must screw an anchor plate into the rooftop.

Dr. Fluharty explained a harness is required to protect employees during a fall. Simon Roofing trains employees to wear a harness any time they access a roof. Simon Roofing's policy also requires employees to wear a harness and to tie off a ladder anytime they are on a parapet wall. Simon Roofing also trained employees to wear the harness any time they rope materials up to the roof. Dr. Fluharty explained employees must rope materials up to the roof because they are required to maintain three point contact at all times on the ladder for safety. For example, both feet and one hand or both hands and one foot would constitute three point contact. He stated an employee cannot

---

[6] Dr. Fluharty is not a medical doctor. He has a doctorate in psychology.

5

carry supplies up the ladder and maintain three point contact on the ladder while climbing.

Dr. Fluharty testified Mr. Stambaugh knew Simon's Roofing's Safety/Fall Protection Policy and Drug/Alcohol Policy and signed an acknowledgement form evidencing his training and understanding of the policies. (Ex. 15.) Once hired, Mr. Stambaugh worked with another properly trained Simon Roofing employee over three months, and the employee showed Mr. Stambaugh all the safety procedures. (Ex. 11.) Weekly, Mr. Stambaugh participated on a Nashville/Memphis conference call where they discussed safety rules. Dr. Fluharty further stated Simon Roofing strictly enforced its fall protection policy. Mr. Fluharty testified the company has a zero tolerance policy for violations of the fall protection policy. As an example, he cited the termination of Mr. Simon, a family member of the owners of Simon Roofing, for failure to terminate an employee for violating the fall protection policy. Simon Roofing also admitted into evidence an employee list of individuals terminated for violation of the fall protection policy between 2011 and 2014. (Ex. 20.) He testified Simon Roofing terminated more employees for safety violations subsequent to the dates in the report.

Dr. Fluharty visited the scene of Mr. Stambaugh's accident approximately one and one half weeks after the injury. He measured the parapet wall to be five feet wide. He did not observe a rope for roping up materials or a bungee cord for tying off the ladder present at the scene. He stated Mr. Williamson, who investigated the scene two hours after the accident, also did not find a rope or bungee cord. Dr. Fluharty admitted on cross examination that "it is possible" someone could have taken the rope and bungee cord prior to Mr. Williamson arriving at the accident scene. However, he had no knowledge of anything removed from the scene. Dr. Fluharty also learned from Mr. Williamson's investigation that Mr. Stambaugh left a blower and shovel on the parapet wall, which he stated violated Simon Roofing's safety policies.

According to Dr. Fluharty, his investigation indicated Mr. Stambaugh did not rope the materials up to the roof or wear a safety harness as required by Simon's policies. There was evidence of spilled coating on the sidewalk[7] that Dr. Fluharty believed Mr. Stambaugh dropped from a significant height. He also testified there was no way Mr. Stambaugh tied off the ladder to the lip of the parapet wall. He stated the lip of the parapet wall was "smooth as glass." There was nothing for the bungee cord to attach to on the parapet. There was also no anchor or drillings for an anchor plate on the wall or roof. Dr. Fluharty stated Mr. Stambaugh did not use an anchor to tie off the ladder.

Mr. Fluharty testified he listened to the conversation between Joseph Simon and Mr. Stambaugh on speakerphone on June 10, 2015. He heard Mr. Stambaugh admit he did not follow the company's safety policy. Mr. Fluharty stated in his affidavit that Mr.

---

[7] Coating is used to waterproof a roof. It comes in a five-gallon bucket that weighs approximately fifty pounds.

Stambaugh indicated he was able to give a statement to Mr. Simon. He also heard Mr. Stambaugh state he decided not to use the fixed ladder inside the restaurant to access the roof, but instead chose to use a portable ladder outside. (Ex. 11 at 3.)

Following Simon Roofing's investigation of the accident, Mr. Fluharty terminated Mr. Stambaugh's employment for violation of the company's safety policies.[8] Specifically, Mr. Fluharty testified Mr. Stambaugh violated 1) the fall protection policy, 2) the harness policy, 3) the roping up policy, and 4) Simon's drug free policy.[9]

Concerning the post-accident drug screen, Mr. Fluharty testified he had no knowledge of the time of day the hospital administered Mr. Stambaugh's drug screen. He acknowledged the hospital gave Mr. Stambaugh Dilaudid and Morphine. He further conceded Dilaudid shows up as hydromorphone and is in a category of opiodes.

Mr. Stambaugh filed a Petition for Benefit Determination seeking medical and temporary disability benefits on October 23, 2015. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. Mr. Stambaugh filed a Request for Expedited Hearing, and this Court heard the matter on January 28, 2016. At the hearing, Mr. Stambaugh asserted he sustained a compensable work injury and complied with Simon Roofing safety policies at the time of his accident. He argued he needs further medical treatment for his injuries and is entitled to temporary disability benefits from June 8, 2015, to present.

Simon Roofing countered Mr. Stambaugh's claim for workers' compensation benefits is barred by Tennessee Code Annotated section 50-6-110(a) (2015) based upon his willful misconduct, failure to use a safety device and positive post-accident drug screen.

**Findings of Fact and Conclusions of Law**

Mr. Stambaugh need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee like Mr. Stambaugh has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be

---

[8] The Court notes Mr. Stambaugh testified he did not receive a notice of separation of employment. Mr. Fluharty testified Simon Roofing sent Mr. Stambaugh a letter advising of his termination. Mr. Fluharty did not know the date of the letter and did not have a copy of the letter at the hearing.

[9] Simon Roofing acknowledged it is not a Tennessee Drug Free Workplace.

7

granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

## Analysis

The Court finds there was no dispute at the Expedited Hearing that Mr. Stambaugh performed duties Simon Roofing employed him to do on a roof at Taco Bell at the time of the accident on June 8, 2015. Thus, the injury occurred in the course of Mr. Stambaugh's employment. The medical records admitted into evidence indicated Mr. Stambaugh sustained multiple acute injuries arising out of his fall from a ladder on June 8, 2015, satisfying the causation element of the statute. Accordingly, the Court finds Mr. Stambaugh's injuries arose primarily out of and in the course of his employment.

The determinative issue in this case becomes whether Mr. Stambaugh's claim for workers' compensation benefits is barred by Tennessee Code Annotated section 50-6-110(a)(1),(3), and (4) (2015). The statute provides, "[N]o compensation shall be allowed for an injury or death due to: the employee's illegal drug use, willful misconduct, or willful failure or refusal to use a safety device. Tenn. Code Ann. § 50-6-110(a)(1),(3), and (4) (2015). Simon Roofing has the burden of proof to establish the defenses. Tenn. Code Ann. § 50-6-110(b) (2015).

### A. *Intoxication Defense*

Mr. Fluharty testified Simon Roofing is not a Drug Free Workplace under Tennessee Code Annotated sections 50-9-101–114. As previously stated, the statute places the burden of proof of an affirmative defense upon the employer. Construing the phrase "due to intoxication," and presumably the companion phrase "due to illegal drugs," the Tennessee Workers' Compensation Panel concluded that "the intoxication need not be the 'sole cause' of the accident, *but it must be a 'proximate cause' and not 'merely a remote or contributing cause.'*" *Alford v. Bruce Hardwood Floors,* 1999 Tenn. LEXIS 283 (Tenn. Workers' Comp. Panel, May 28, 1999) (emphasis added).

The proof before the Court relevant to Simon Roofing's intoxication defense is Mr. Stambaugh's failed drug screen at the hospital and Simon Roofing's inventory of Mr. Stambaugh's work truck that revealed prescription medication in the truck.

Concerning the drug screen, the proof indicated Mr. Stambaugh received both hydromorphone and opiodes during his hospitalization at Regional Medical Center. The drug screen report indicated the hospital administered the test on June 8, 2015; however, there was no proof of the time the hospital administered the test. There was no evidence indicating whether they tested Mr. Stambaugh prior to or after his first dose of medication.

8

Regarding Mr. Stambaugh's prescription medication, Mr. Stambaugh admitted he takes legally prescribed Oxycodone and Valium on an as-needed basis for a prior back injury. He further admitted he kept his prescriptions in a suitcase in his work truck since he travels for job assignments. Mr. Stambaugh testified he last took his medication on June 6, 2015, two days prior to his work accident. There was no proof offered to contradict Mr. Stambaugh's testimony concerning his last dose of medication. Moreover, Mr. Fluharty stated in his sworn affidavit that Mr. Stambaugh spoke to his supervisor, Mr. Williamson, on the telephone the morning of the accident. (Ex. 11.) Mr. Williamson did not testify at the hearing, and Simon Roofing offered no proof to show Mr. Williamson believed Mr. Stambaugh was impaired on the date of injury. Simon Roofing offered no evidence that Mr. Stambaugh's use of prescription medication was the proximate cause of his work injury. Accordingly, the Court finds Simon Roofing did not meet the necessary burden of proof for denying compensability based on intoxication/illegal drug use.

## B. *Willful Misconduct/Willful Refusal to Use a Safety Device*

The controlling case outlining the willful misconduct/willful failure to use a safety device affirmative defense is *Mitchell v. Fayetteville Public Utilities,* 368 S.W.3d 442 (Tenn. 2012). Importantly, the previous statutory preference for an equitable construction and a remedial application played no role in that case's outcome. Therefore, this Court is bound by its principles. *See McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

The Supreme Court held in *Mitchell* that the employer could meet its burden to prove the defenses of willful misconduct and willful failure or refusal to use a safety device without having to show an element of perversity, but reiterated the requirement that it must prove that the employee's conduct was willful. *Mitchell,* 368 S.W.3d at 453. In order to successfully defend a workers' compensation claim on the basis of willful misconduct, willful disobedience of safety rules, or willful failure to use a safety device under Tennessee Code Annotated section 50-6-110(a), the *Mitchell* Court adopted the following four-step test:

1. the employee's actual, as opposed to constructive, notice of the rule;
2. the employee's understanding of the danger involved in violating the rule;
3. the employer's bona fide enforcement of the rule; and,
4. the employee's lack of a valid excuse for violating the rule.

*Id.*

In *Mitchell*, the high Court upheld the employer's misconduct defense, holding the

employer met its burden to prove that the employee's misconduct was willful. In that case, a lineman for a utility company sustained an injury while working on electric lines. The injured employee was precluded from recovering benefits, because he was not wearing rubber gloves while working around electricity when he was in a bucket lift. The Court held the injured employee acted with the requisite knowledge of the safety regulation, thus defeating his claim for benefits. The Court found that an "established policy, clear and unequivocal, was known to the Employee," that he had been fully aware of the danger, and that knew the employer consistently enforced the rule. *Id.* at 455. The Court held the injured employee did not have a valid excuse for the failure to use a safety appliance or device, which amounted to willfulness and constituted the proximate cause of his injuries. *Id.*

In the instant case, the Court finds the proof demonstrated Mr. Stambaugh had actual notice of Simon Roofing's safety rules and understood the danger involved in violating the rules satisfying the first two elements in *Mitchell*. Mr. Stambaugh admitted Simon Roofing trained him on its safety procedures and specifically testified his training included ladder safety training, harness training, and training on how to transport materials up and down from a roof. He signed a document acknowledging his receipt, training, and understanding of the policies. (Ex. 15.) The proof further demonstrated Mr. Stambaugh understood the purpose of the safety procedures and danger in violating the rules. Mr. Stambaugh testified he was an experienced roofer having worked as a roofer on and off since 1977.

Next, the Court finds Simon Roofing's representatives testified without contradiction that it engaged in bona fide enforcement of its safety policies, particularly its fall protection policies. Dr. Fluharty testified Simon Roofing has a zero tolerance policy for violations of its fall protection policies. He testified he terminated Mr. Simon, the former Risk Asset Manager, for failing to terminate a different employee who violated the fall protection policy. Simon Roofing also admitted into evidence a report listing Simon Roofing employees terminated between 2011 and 2014 for violations of the fall protection policies. Mr. Stambaugh offered no proof to rebut the testimony of Simon Roofing's representatives regarding bona fide enforcement of the policy. Thus, Simon Roofing satisfied the third element in *Mitchell*.

Finally, Simon Roofing must establish Mr. Stambaugh lacked a valid excuse for violation of the rule. Unlike the employee in *Mitchell*, Mr. Stambaugh testified he complied with Simon's safety procedure leading to his injury. However, the Court finds there were several conflicting versions of the accident admitted into evidence at the Expedited Hearing.

*Version One*

Mr. Stambaugh testified twice that his memory of the details leading up to the

10

accident were "vague at best." Yet, he gave a detailed account of every action he took leading up to the fall. He testified he complied with Simon Roofing's safety procedures, particularly the fall protection policy, by tying off the ladder with his own personal bungee cord after setting up the ladder. Mr. Stambaugh's testimony was less certain in his affidavit regarding the ladder when he stated, "While my recollection of the day of this incident is somewhat scattered, it is my recollection that I tied the ladder off with bungee cords." He testified he was not required to wear a harness since he estimated the parapet wall was taller than thirty-nine inches. He determined the height by standing up against the wall and stated it was as high as his chest. He estimated his chest to be four feet tall. Mr. Stambaugh also testified he complied with the rule regarding roping up materials. However, he never specifically stated he roped up the blower, shovel, buckets of coating or other supplies found on the roof, parapet, or sidewalk following the accident. Mr. Stambaugh admitted he failed to wear a harness, as required, while standing on the parapet wall and roping up materials.

Mr. Stambaugh testified he could not recall what happened after he untied the ladder to climb down, load the ladder on his truck, and leave for lunch. However, his affidavit gave a somewhat different account when he stated he attempted to walk across the six foot parapet wall and swung his leg over to climb onto the ladder.

## Version Two

Mr. Stambaugh denied the version of the accident detailed on the Simon Roofing Accident Report, which indicated he was finished with his work and was "climbing down the ladder to get a garbage bag to clean up debris and the ladder slipped and the five gallon bucket of concrete fell with me." Mr. Stambaugh stated his wife drafted this version based upon Mr. Williamson's belief of how the accident happened.

## Version Three

Mr. Simon testified to another version Mr. Stambaugh reported to him in the hospital on June 10, 2015. In this version, Mr. Stambaugh set up the ladder outside after deciding the restaurant was too busy to use the permanent ladder and roof access inside the building. Upon climbing the ladder, he realized there was not a good place to tie it off. He reported carrying the blower up the ladder by hand and stepping back onto the ladder. He could not recall any details after stepping back onto the ladder. Mr. Simon and Mr. Fluharty both testified Mr. Stambaugh admitted he did not follow the safety rules concerning tying off the ladder and roping up the materials and apologized to them. The Court notes Mr. Stambaugh did not *deny* giving this statement to Simon Roofing while in the hospital. Instead, he testified he did not recall what he said to the Simon representative.

After thorough consideration of the evidence, the Court finds Mr. Stambaugh's

11

testimony concerning the accident was not credible considering his admitted lack of memory of the accident, some internal inconsistencies in his account of the accident, the conflicting testimony of the accident, and the contradictions between his account and the photographic evidence of the scene.

The Court found the following three points in Mr. Stambaugh's own testimony inconsistent with his account of the accident and the photos of the scene.

1. Mr. Stambaugh testified immediately before he untied his ladder to climb down and leave for lunch, he took the buckets[10] and set them on the parapet wall next to the ladder. Mr. Stambaugh failed to explain *why* he put the buckets of coating on the wall next to his ladder immediately before climbing down if he had no intention of taking any supplies down the ladder. He testified he was simply leaving for lunch. However, the photograph taken of the sidewalk following the accident showed two buckets and splattered coating on the sidewalk, not on the parapet wall where Mr. Stambaugh stated he placed them. Mr. Stambaugh had no explanation how the buckets and splattered coating made it to the sidewalk. Dr. Fluharty testified his investigation determined Mr. Stambaugh must have dropped the buckets of coating to the ground splattering on the sidewalk. The Court finds Mr. Stambaugh's own testimony concerning the buckets is more consistent with Dr. Fluharty's account.

2. Simon Roofing's counsel asked Mr. Stambaugh on cross examination why he left a blower and shovel on the parapet wall when Simon's safety rules require any equipment must be removed from the parapet when leaving the premises. Mr. Stambaugh immediately responded, "If I hadn't fallen, those would never have been there." He later corrected himself and testified he was going to leave the equipment on the wall while he went to lunch despite Simon Roofing's safety rule. The Court finds Mr. Stambaugh's initial response was candid and more likely the honest answer to the question. The Court further finds his initial answer indicates he was not *immediately* leaving the scene for lunch. Instead, his testimony suggests he was transporting supplies to and/or from the roof, which is consistent with the testimony from Mr. Simon and Dr. Fluharty.

3. Mr. Stambaugh had no answer to the question of where his bungee cord and rope for roping up supplies went. The Court finds it reasonable to conclude, based upon the evidence, that if Mr. Stambaugh tied off the ladder with bungee cords and roped up supplies with a rope, as he said he did, the cords and rope should have been found somewhere at the scene. The uncontroverted proof was Simon Roofing's investigation found no bungee cords or rope at the accident site.

---

[10] Based upon the entirety of the testimony, the Court understood the buckets contained coating for the roof.

Considering the totality of the evidence, the Court finds the proof supports Mr. Simon's and Dr. Fluharty's testimony that Mr. Stambaugh admitted he did not tie off the ladder or use a rope when he carried supplies up the ladder by hand. Moreover, Mr. Stambaugh's own testimony at the hearing established he violated Simon Roofing's safety policies by not using a harness. The Court finds these violations of Simon Roofing's fall protection policy were the proximate cause of Mr. Stambaugh's accident.

Having found Mr. Stambaugh violated Simon Roofing's fall protection policy, the Court further finds Mr. Stambaugh offered no explanation or excuse to Simon Roofing for his failure to follow the safety policies on the date of injury. According to Mr. Simon, Mr. Stambaugh stated he did not use the permanent ladder inside the Taco Bell to reach the roof access because the restaurant was busy and he did not want disturb anyone. He further stated upon setting up his ladder outside the building, he realized there was no good spot to tie off the ladder. The Court finds Mr. Stambaugh gave no valid excuse for why he did not secure an anchor plate to the roof to allow him to tie off the ladder under those circumstances. Mr. Simon testified Mr. Stambaugh was remorseful in their conversation for violating the rules, but there was no proof that he offered any reasonable explanation for violating the rules. Under these facts, the Court finds Mr. Stambaugh's actions were willful. Accordingly, the Court finds Simon Roofing established the final element of the willful misconduct/failure to use a safety device defense.

Based on the foregoing, the Court finds Simon Roofing met its burden of proof establishing the affirmative defenses of willful misconduct and willful failure to use a safety device. Accordingly, Mr. Stambaugh's request for medical and temporary disability benefits is denied at this time.

This matter is set for a Status Hearing on March 28, 2016, at 9:00 a.m. Central Standard Time.

**IT IS SO ORDERED.**

**ENTERED this the 9th day of March, 2016.**

Judge Amber E. Luttrell
**Court of Workers' Compensation Claims**

Status Hearing:

An Status Hearing has been set with **Judge Amber E. Luttrell, Court of**

**Workers' Compensation Claims. You must call 901-543-2668 or toll-free at 855-543-5046 to participate.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation

14

Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 9th day of March, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Jay Degroot, Esq., Attorney for Employee | | | X | jdegroot@garretylaw.com; ghayes@garretylaw.com |
| Owen Lipscomb, Esq., Attorney for Employer | | | X | Owen.lipscomb@libertymutual.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

15

## APPENDIX

**Exhibits:**
1. First Report of Work Injury
2. Wage Statement
3. Notice of Denial
4. Medical Bills of Regional One Health Hospital
5. Medical Records of Regional Medical Center
6. Simon Roofing Employee Accident Form
7. Escreen drug testing results
8. Simon Roofing Service Forman Job Description
9. Simon Roofing General Safety Operating and Procedures Policy
10. Affidavits of Mark Stambaugh and Tammy Stambaugh
11. Affidavit of Walter C. Fluharty
12. Photographs of roof of Taco Bell
13. Liberty Mutual letter of denial of claim dated June 18, 2015
14. Surveillance photograms of Mr. Stambaugh
15. Simon Roofing Safety Policy and Training Acknowledgment Form
16. Photograph of parapet of Taco Bell
17. Photographs of sidewalk at job site
18. Joseph Simon's memorandum dated June 10, 2015
19. Simon Roofing Drug and Alcohol Free Workplace Policy
20. Simon Roofing Employee Report
21. Photograph of Simon Roofing Duffle Kit containing safety supplies

**Technical Record:**[11]

1. Dispute Certification Notice
2. Petition for Benefit Determination
3. Request for Expedited Hearing
4. Mr. Stambaugh's Position Statement dated October 21, 2015
5. Simon Roofing's Position Statement dated November 3, 2015
6. Simon Roofing's Request for Evidentiary Hearing
7. Simon Roofing's Pre-Expedited Hearing Brief

---

[11] The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.